IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LOK T. LAU,

    Plaintiff,                              CIV. S-04-2351 WBS PAN (GGH) PS

    v.

ANTONIO V. SILVA, P.C.,             <u>FINDINGS AND RECOMMENDATIONS</u>
    Attorney at Law,

    Defendant.
_____/

        Defendant moves to compel arbitration and stay these proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., or, alternatively, to dismiss two of plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6). These matters are before this court pursuant to E.D. Cal. L.R. 72-302(c)(21). Defendant's motions were submitted for decision on the papers on November 7, 2005, and this case referred to the undersigned on May 24, 2006. The court now issues these findings and recommendations.

I. <u>BACKGROUND</u>

        The original complaint, filed November 2, 2004, invoked this court's diversity jurisdiction and sought $5 million damages based on state law claims for breach of contract, professional negligence and conversion by attorneys Silva and Reeves. Plaintiff, a former FBI agent, alleged he entered into contracts with Silva in April 1999 and Reeves in February 2002 for

legal representation in plaintiff's action against the U.S. Department of Justice.  That action – Lau v. John Ashcroft, Attorney General, Civ. S-02-0390 GEB GGH – alleged discrimination based on race and national origin in violation of Title VII, discrimination based on disability in violation of the Rehabilitation Act, and retaliatory termination in violation of Title VII.  On November 3, 2003, the Honorable Garland E. Burrell, Jr., granted defendant's motion for summary judgment on each of plaintiff's claims.  Plaintiff then filed this action alleging defendants Silva and Reeves failed adequately to represent him.

On August 31, 2005, the court granted defendants' motion to dismiss on the ground it was without subject matter jurisdiction to consider plaintiff's complaint due to the lack of complete diversity among the parties.  28 U.S.C. § 1332; Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 109 S. Ct. 2218 (1989); Lee v. American National Insurance Company, 260 F.3d 997, 1004-1005 (9th Cir. 2001).  Plaintiff was accorded twenty days within which to serve and file an amended complaint, with which he timely complied on September 16, 2005.  The amended complaint properly names only defendant Silva.

Defendant now moves to compel arbitration and stay these proceedings, in reliance on the parties' written agreement to arbitrate "any and all claims related to and arising from fees, recovery or attorney's representation."  That agreement, contained in *one* of the parties' broader "Employment Contracts,"[1] provides in pertinent part (Exhibit A to the Amended Complaint, at p. 9):

////

////

////

---

[1] The parties' agreement consists of two distinct wholes, apparently "thrown together" to acknowledge plaintiff's residence in California, defendant's business in Texas.  The first portion bears the heading, "Employment Contract, State of California, County of _____" (blank not filled in); the second portion bears the heading, "Employment Contract, State of Texas, County of El Paso."  The first portion bears plaintiff's signature and that of a notary public; the second portion bears the signatures of both plaintiff and defendant.

> ARBITRATION REQUIRED
> Attorney and client, hereby agree to submit any and all claims related to and arising from fees, recovery or attorney's representation to final and binding arbitration.
> The parties will attempt to select a mutually agreeable arbitrator, and failing such an agreement will select an arbitrator by alternatively striking from a panel of not less than five (5) arbitrators provided to the parties by the Judicial Arbitration and Conciliation Service, or the American Arbitration and Mediation Services, Inc., or the Federal Mediation and Conciliation Service, or the America Arbitration Association. The Arbitration shall be governed by the rules of the body from which the arbitrator is selected. Costs of arbitration shall be split equally.

Plaintiff opposes defendant's motion based on his assertion the parties' agreement to arbitrate is unenforceable as "adhesive" because "procedurally unconscionable." Plaintiff asserts defendant "slipped in" the arbitration clause "unbeknown to plaintiff" and based on the knowledge "plaintiff needed an attorney to represent him immediately while faced with threat of termination by his employer and deadlines from his other EEO complaints;" that defendant rushed plaintiff through the review and signing of a faxed copy of the agreement; and that defendant was at a "tremendous advantage" as "an attorney with a degree in 'Psychology' in his undergraduate studies" while plaintiff was "mentally disabled" as demonstrated by the recent Department of Labor finding of disability since April 1999, and as acknowledged by defendant in his statement in the parties' contract that "[y]our psychological condition may not allow you to follow through with a lawsuit or administrative hearing."[2]

Alternatively, defendant moves to dismiss Counts One and Two of the amended complaint on the ground they fail to state claims for which relief may be granted. Fed. R. Civ. P. 12(b)(6).

\\\\\
\\\\\
\\\\\

---

[2] The first portion of the parties' agreement sets forth "several unique problems" associated with plaintiff's case.

II. MOTION TO ARBITRATE

    A. LEGAL STANDARDS

The Federal Arbitration Act (FAA or Act) "was enacted to overcome courts' reluctance to enforce arbitration agreements. The Act not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration, and a federal common law of arbitrability which preempts state law disfavoring arbitration." Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (citations omitted). "The Federal Arbitration Act rests on the authority of Congress to enact substantive rules under the Commerce Clause." Southland Corp. v. Keating, 465 U.S. 1, 11, 104 S. Ct. 852, 858 (1984).

An application to compel arbitration is properly heard as a motion before this court, 9 U.S.C. § 6, where there exists an independent basis for federal jurisdiction, 9 U.S.C. § 4, Keating, supra, 465 U.S. at 16, n. 9, 104 S. Ct. at 861, n. 9, in this case, diversity.

The Act provides that written agreements to arbitrate in contracts involving, inter alia, interstate commerce, "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also 9 U.S.C. § 1. "[T]he Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus . . . agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985) (original emphasis). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656 (1996). "Thus state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492, n. 9, 107 S. Ct. 2520, 2527, n. 9 (1987) (original emphasis).

B. ANALYSIS

In assessing the merits of a motion to compel arbitration, "[t]he court's role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. See 9 U.S.C. § 4." Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

The party moving for arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, while the party challenging the validity of an arbitration clause has the burden of proving by a preponderance of the evidence any fact necessary to its defense, in this case, unconscionability. Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951, 972, 64 Cal. Rptr. 2d 843, 856 (1997); Rosenthal v. Great Western Financial Securities Corporation, 14 Cal. 4th 394, 58 Cal. Rptr. 2d 875 (1996).

"In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.' First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)." Circuit City, supra, 279 F.3d at 892. A threshold issue, not addressed by the parties, is choice of state law in making this assessment. Although one portion of the parties' "Employment Contract" expressly provides that Texas law shall govern construction of the parties' agreement,[3] the other

---

[3] The second portion of the parties' Employment Contract provides that the agreement should be construed under the laws of Texas (Exhibit A to the Amended Complaint, at p. 9):

TEXAS LAW TO APPLY
This agreement shall be construed under and in accordance with the laws of the State of Texas, and all obligations of the parties created hereunder are performance [sic] in El Paso County, Texas.

Another provision, contained in both the "California" and "Texas" portions of the contract, directs the client to the State Bar of Texas to pursue claims of professional misconduct (Exhibit A to the Amended Complaint, at pp. 3 and 8):

NOTICE TO CLIENTS
The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar's Office of General

portion not only fails to reference choice of law but bears the heading, "Employment Contract, State of California, County of _____" (blank not filled in.)  See n. 1, supra.  Equally unhelpful is the amended complaint which is without legal citation.  "[A] district court in diversity jurisdiction must apply the law of the forum state to determine the choice of law."  Cleary v. News Corporation, 30 F.3d 1255, 1265 (9th Cir. 1994), citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22 (1941).  Applying California's "governmental interest" test,[4] the court concludes that California contract law should apply as there can be no "true conflict" between California and Texas (or, for that matter, among any of the states) in "generally applicable contract defenses" that may be relied upon to invalidate "any" contract. Moreover, defendant cites only California law in support of its motions, thus waiving any argument Texas law should apply to the instant dispute.

       "The fundamental canon of construction which is applicable to contracts generally is the ascertainment of the intention of the parties."  Piedmont Pub. Co. v. Rogers, 193 Cal. App. 2d 171, 187, 14 Cal. Rptr. 133, 143 (1961), citing Cal. Civil Code § 1636.  "Where any doubt exists as to the purport of the parties' dealings as expressed in the wording of their contract, the court may look to the circumstances surrounding its execution-including the object, nature and

---

    Counsel will provide you with information about how to file a complaint.  Please call 1-800-932-1900 toll-free for more information.

[4] "California's approach to choice of law questions focuses on the 'governmental interest' of each state involved in the litigation.  This approach has two prongs.  First, the court must determine whether there is a true conflict between the laws of the two jurisdictions on the issue presented by the litigation.  There is no true conflict unless the laws of the two jurisdictions differ and both states have a legitimate interest in having their law apply. . . . Once a court has established the existence of a true conflict between states, the court must apply the law of the state whose interest would be more impaired if its law were not applied.  This analysis does not require the court to balance which state has the 'better' social policy on the issue in question. Rather, the comparative impairment analysis attempts to determine the relative commitment of the respective states to the laws involved by considering such factors as the history and current status of the states' laws" and "the function and purpose of those laws.  The court may also look to the reasonable expectations of the parties as to which state law would govern a dispute between them."  Waggoner v. Snow, Becker, Kroll, Klaris & Krauss, 991 F.2d 1501, 1506-1507 (9th Cir. 1993) (citations and internal quotations omitted).

subject matter of the agreement-as well as to subsequent acts or declarations of the parties 'shedding light upon the question of their mutual intention at the time of contracting.'" Barham v. Barham, 33 Cal. 2d 416, 423, 202 P. 2d 289, 293 (1949).

While generally "I was so rushed I could not read the contract" will not result in a favorable ruling to the rushed party attacking the contract, the present situation is different. Plaintiff was given two distinct contracts to sign, *only one of which contained the arbitration clause at issue here.* Other differences in the contracts are set forth in footnote 1. Defendant would have the court stitch the differing contracts together so that defendant, the drafter of the contracts, can pick and choose among the different provisions as to what may be enforced. However, unless the parties have agreed to all material points, there is no enforceable contract insofar as the terms of an uncertain contract are concerned. Banner Entertainment, Inc. v. Superior Court (Alchemy Filmworks), 62 Cal. App. 4th 348, 358, 72 Cal. Rptr. 2d 598, 604 (1998). "Here, however, there was no evidence of an agreement to arbitrate. In other words, it is not the presence or absence of a signature which is dispositive; it is the presence or absence of evidence of an agreement to arbitrate which matters." Id. at 360, 72 Cal. Rptr. 2d at 605. Given that the two contracts here purportedly binding plaintiff as to arbitration differed in their terms about arbitration, i.e., one did not contain a provision relating to arbitration at all, no written contract was formed on the point of representation.[5]

II. MOTION TO DISMISS

Defendant moves alternatively to dismiss Counts One and Two of the amended complaint on the ground they fail to state claims for which relief may be granted. Fed. R. Civ. P. 12(b)(6). Plaintiff opposes the motion. Defendant does not seek to dismiss the third and final count of the complaint, conversion, which asserts defendant fraudulently converted plaintiff's

---

[5] There may well have been an implied contract for representation; however, that implied contract would have no bearing on an agreement to arbitrate. Nor would the absence of a written contract affect plaintiff's negligence action. Plaintiff was in fact represented by defendant.

funds for his personal use; defendant seeks resolution of what he characterizes as a disputed charge on one of plaintiff's credit cards.

### A. LEGAL STANDARDS

A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief. NOW, Inc. v. Schiedler, 510 U.S. 249, 256, 114 S. Ct. 798, 803 (1994); Cervantes v. City of San Diego, 5 F.3d 1273, 1274-75 (9th Cir. 1993). Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint's factual allegations are accepted as true. Church of Scientology of California v. Flynn, 744 F.2d 694 (9th Cir.1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir.1995). General allegations are presumed to include specific facts necessary to support the claim. NOW, 510 U.S. at 256, 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

The court may disregard allegations contradicted by the complaint's attached exhibits. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir.1998). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987). The court may, however, consider matters of public record, including pleadings, orders, and other papers filed with the court. Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104, 111 S. Ct. 2166 (1991). "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or

unwarranted deductions of fact.  See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

However, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 595-96 (1972).  Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal.  See Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir.2000) (en banc); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B.  ANALYSIS

#### 1.  COUNT ONE

Count One of the amended complaint, "Breach of Contract," asserts that "[a]n implicit term of the contract which defendant entered into with plaintiff was that defendant would use due care to competently and diligently represent plaintiff's interests in his suit against the United States Department of Justice," and that "defendant breached that term in the manner described below:

> 1) Defendant failed in his duty to plaintiff to ensure that the legal pleadings on behalf of plaintiff were legally sufficient.
> 2) Defendant's legal pleadings failed to fulfill duties owed plaintiff by documenting the fact that there were many other individuals who violated the FBI's 'bright line policy' of January 3, 1994, were outside of plaintiff's protected class and were not terminated.
> 3) Defendant's legal pleadings failed to lay a legal foundation for the declaration of Dr. Frederick W. Whitehurst in support of plaintiff's opposition to USDOJ's motion for summary judgment when Whitehurst's declaration was excluded.
> 4) Defendant failed to legally authenticate evidence proffered by plaintiff in his opposition to USDOJ's motion for summary judgment when these noted [sic] were not authenticated thus rendering the evidence inadmissible."

Plaintiff claims that this court granted summary judgment in favor of the Department of Justice "[a]s a direct and foreseeable result of defendant's breach of their [sic] contract with plaintiff," resulting in "severe financial and emotional damages" to plaintiff.

\\\\\

1    The elements of a breach of contract claim are "the existence of the contract,
2 performance by the plaintiff or excuse for nonperformance, breach by the defendant and
3 damages. First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745, 108 Cal. Rptr.
4 2d 23, 33-34 (2001), citing 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 476, p. 570.
5 While this court has found the parties' written contract invalid, this does not invalidate the
6 implied term of the parties' oral agreement that defendant would exercise due care in his legal
7 representation of plaintiff. Plaintiff has alleged facts sufficient to state a claim for breach of
8 implied contract. In addition, plaintiff has stated the elements of this claim plainly and
9 succinctly, and identified specific overt acts giving defendant fair notice of the allegations against
10 him. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).; Fed. R. Civ. P.
11 8(a).

12    Defendant asserts that plaintiff's contention, set forth in his response to these
13 motions, that this "is not a legal malpractice" but a "breach of trust" case, is both unsupportable
14 and significant. Defendant relies on California law interpreting *any* allegation of attorney
15 professional negligence as a legal malpractice claim (see, e.g., Kracht v. Perrin, Gartland &
16 Doyle, 219 Cal. App. 3d 1019, 1022, 268 Cal. Rptr. 637 (1990) (" [w]here the injury is suffered
17 by reason of an attorney's professional negligence, the gravamen of the claim is legal
18 malpractice, regardless of whether it is pled in tort or contract"), to which is applied a "but for"
19 standard of proof (see, e.g., Viner v. Sweet,  30 Cal .4th 1232, 1241, 135 Cal. Rptr. 629 (2003)
20 ("[in a litigation malpractice action, the plaintiff must establish that *but for* the alleged
21 negligence of the defendant attorney, the plaintiff would have obtained a more favorable
22 judgment or settlement in the action in which the malpractice allegedly occurred") (original
23 emphasis)). Defendant then asserts that plaintiff cannot meet this "but for" standard because the
24 court's adverse decision and reasoning in Lau v. John Ashcroft, Attorney General, Civ. S-02-
25 0390 GEB GGH, demonstrates that "nothing the defendant[] failed to do could have possibly"
26 resulted in a favorable decision. However, it is this very argument that must be addressed at trial.

### 2. COUNT TWO

Count Two of the amended complaint asserts "Professional Negligence" based on defendant's "fiduciary duty to represent plaintiff competently and diligently." Plaintiff asserts defendant breached this duty in the following ways:

1) Defendant failed to disclose plaintiff's expert witnesses by the March 23, 2003 deadline pretrial scheduling order filed April 25, 2002.
2) Defendant failed to file motions in time to legally extend the deadline for expert witness disclosure, nunc pro tunc to June 4, 2003, the date of late disclosure of expert witness testimony.
3) Defendant did not calendar his nunc pro tunc motion to amend [until] 14 days past the court's deadline.
4) On June 4, 2003, defendant failed to file the required legal motion with the disclosure of expert witness reports.
5) Defendant failed to apply to the Eastern District of California for Pro Hac Vice status, as required, since he was not admitted to practice in the district.
6) Defendant failed to exercise Local Rule 6-142(e).[6]
7) Defendant failed to diligently comply with the court's scheduling order.
8) The Clerk's Office explained the Pro Hac Vice application to defendant Silva in July 2002. Over a year later, defendant Silva still had not applied for Pro Hac Vice.

Plaintiff claims this court's adverse decision was "a direct and foreseeable result of defendant's professional negligence," resulting in "severe financial and emotional damages" to plaintiff.

"In order to establish a cause of action for legal malpractice the plaintiff must demonstrate: (1) breach of the attorney's duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a proximate causal connection between the negligent conduct and the resulting injury; and (3) actual loss or damage resulting from the negligence." Thompson v. Halvonik, 36 Cal. App. 4th 657, 661, 43 Cal. Rptr. 2d 142 (1995). As in Count One, plaintiff has fully informed defendant of the allegations against him, and alleged facts sufficient to state a claim for negligence.

Defendant's motion to dismiss Counts One and Two should be denied.

---

[6] There is not currently a Local Rule 6-142(e); however, the labeling of the local rules has changed over time and plaintiff should be permitted to clarify this allegation.

11

## III. CONCLUSION

For the foregoing reasons, it is HEREBY RECOMMENDED that the court:

1. Deny defendant's October 4, 2005 motion to compel arbitration and stay this action; and

2. Deny defendant's October 4, 2005 motion to dismiss.

These findings and recommendations are submitted to the Honorable William B. Shubb, the United States District Judge assigned to this case. 28 U.S.C. § 636(b)(l). Written objections may be filed within ten days after being served with these findings and recommendations. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 8/16/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

NOW6:LAU.Mtn Arb.final